## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DIANE RUNKEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-3206 |
| | ) | |
| CITY OF SPRINGFIELD, ILLINOIS, | ) | |
| and JAMES O. LANGFELDER, | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion for Summary Judgment (d/e 20) filed by Defendants City of Springfield and James O. Langfelder. For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.

### I.     PROCEDURAL BACKGROUND

On August 16, 2018, Plaintiff Diane Runkel filed a three-count Complaint (d/e 1) against the City of Springfield (the "City") and Mayor James Langfelder in his individual capacity. Count I alleges that the City discriminated against Plaintiff in violation of Title VII of the Civil Rights Act by passing Plaintiff over for a promotion

because of her race. Plaintiff is white. Count II, brought under 42 U.S.C. § 1983, alleges that Mayor Langfelder violated Plaintiff's Fourteenth Amendment equal protection rights when he passed Plaintiff over for a promotion because of her race. Count III alleges the City retaliated against Plaintiff in violation of Title VII when the City disciplined Plaintiff by rescinding an offered pay increase and having Plaintiff sign a disciplinary "Last Chance Agreement."

Defendants moved to dismiss Plaintiff's Complaint on October 22, 2018, arguing that Mayor Langfelder was entitled to qualified immunity and that Springfield's Purchasing Agent was not an "employee" under Title VII but rather a policy-level appointee, such that the City was immune from suit on the basis of its choice of Purchasing Agent. <u>See</u> d/e 8. The Court denied Defendants' Motion to Dismiss on September 9, 2019, holding that the Purchasing Agent is an "employee" under Title VII and that Mayor Langfelder was not entitled to qualified immunity at the pleading stage. <u>See</u> d/e 11. Defendants filed the instant Motion for Summary Judgment (d/e 20) on December 1, 2020. Plaintiff filed her Response (d/e 22) to Defendant's summary judgment motion on

December 29, 2020.  On January 19, 2021, Defendants filed a
Reply (d/e 24) to Plaintiff's Response.  On February 2, 2021,
Plaintiff filed a Motion to Strike (d/e 25) requesting that the Court
strike a "supplemental undisputed fact" included in Defendants'
reply brief.  Defendants filed a Response (d/e 26) to the Motion to
Strike on February 16, 2021.

## II.    FACTS

The Court draws the following facts from the parties'
statements of undisputed facts and from the evidence submitted by
the parties.  Any facts not disputed, or disputed without evidentiary
documentation of the basis for the dispute, have been deemed
admitted.  See CDIL-LR 7.1(D)(2)(b)(2).

Plaintiff Diane Runkel was an employee in the City's Office of
Budget and Management (the "OBM") between 2007 and 2018.
From 2015 until her resignation in 2018, Plaintiff held the position
of Assistant Purchasing Agent, the "number two position" in the
OBM's Purchasing Department.  D/e 22, p. 1.

In February 2018, Runkel's supervisor, Sandy Robinson,
resigned his position as Purchasing Agent for the City, creating a

vacancy. Runkel advised the Director of the OBM, William McCarty, that she was interested in the position. Director McCarty told her that he would discuss the matter with the Mayor of Springfield, James Langfelder.

The Purchasing Agent is charged with heading the Purchasing Department and "directing and overseeing the City's purchasing operations." D/e 22, p. 16. The City's Municipal Code provides that the Purchasing Agent is appointed by the director of the OBM with the advice and consent of the city council. Notwithstanding this provision, Mayor Langfelder had personally chosen Sandy Robinson for the position and would also choose Robinson's successor. See d/e 20, exh. A, p. 20; exh. B, p. 10, 12. Mayor Langfelder first offered the Purchasing Agent position to a man named Darryl Harris, who declined the appointment. On February 14, 2018, McCarty wrote an email to Plaintiff and Kassandra Wilkin, advising the two of them that he would recommend that Plaintiff become the acting Purchasing Agent and that Wilkin become the acting Assistant Purchasing Agent if a permanent replacement had not been selected by the time Robinson left the

City.  Wilkin had worked in the Purchasing Department in a position subordinate to Plaintiff since 2015.  On February 26, 2018, Mayor Langfelder told Director McCarty that Mayor Langfelder had chosen Wilkin to be the new Purchasing Agent.  Wilkin sent a resume and a letter expressing interest in the Purchasing Agent position to Mayor Langfelder's deputy mayor, Bonnie Drew, on March 1, 2018.

Also on March 1, 2018, Plaintiff met with Mayor Langfelder and Deputy Mayor Drew.  At this meeting, Plaintiff was offered a pay raise of $5,000 per year and was informed that Mayor Langfelder was going to appoint Wilkin to the Purchasing Agent position.  Mayor Langfelder told Plaintiff that he was appointing Wilkin because she had spent time working at the City's municipal utility company, City Water, Light, & Power ("CWLP") and he wanted to merge the City's purchasing with CWLP purchasing.  He also told Plaintiff that he was impressed with Wilkin's work ethic and that Wilkin had gotten a master's degree while working for the City. Additionally, he told Plaintiff that he had not considered Plaintiff for the Purchasing Agent position.  At the time of the meeting, neither

Mayor Langfelder nor Deputy Mayor Drew knew what position Plaintiff held in the Purchasing Department.

After her meeting with the Mayor, Plaintiff took a lunch break that lasted approximately two and a half hours. Plaintiff returned to her office after a friend of hers, who was also a City employee, called to tell her "[y]ou need to come back to work." D/e 20, exh. A, pp. 35–36. Plaintiff then had a telephone conversation with Director McCarty, during which she spoke loudly, and stated that Wilkin had only been selected because she was black. Wilkin overheard this conversation through the closed door of Plaintiff's office, entered, and asked Plaintiff to lower her voice. Plaintiff told Wilkin, loudly and "not very nicely," to "[g]et out of my office!" D/e 22, p. 6. After this altercation, the City's Human Resources Director came to the Purchasing Department and asked Plaintiff to leave for the day. Plaintiff was placed on administrative leave until March 5, 2018.

On March 2, 2018, Plaintiff sent a text message to Director McCarty in which she stated that she believed she had been the victim of "reverse discrimination" based on her race. D/e 22-5,

p. 9.  Plaintiff is white.  Sandy Robinson, Darryl Harris, and Kassandra Wilkin are black.

On March 7, Plaintiff went on medical leave due to "acute emotional stress."  D/e 20, exh. F-38, p. 2.  While on medical leave, Plaintiff sent e-mails to two city aldermen stating that she had "really thought it was my turn" to be appointed Purchasing Agent.  D/e 22, pp. 6–7.  She also wrote that several items in Wilkin's resume and application materials were "Absolutely False!"  Id. at p. 7.  On March 21 and 22, 2018, Plaintiff's attorney sent two letters to Mayor Langfelder on behalf of Plaintiff.  The first requested a copy of Plaintiff's personnel records and all documentation that had been used to justify the decision to appoint Wilkin to the Purchasing Agent position.  The second indicated that Plaintiff believed that Wilkin had been appointed because of her race and stated that Plaintiff intended to file a claim of discrimination with the Equal Opportunity Employment Commission ("EEOC").

On March 26, 2018, Plaintiff received a "Final Notice of Disciplinary Action" from the City, suspending her for 5 days for engaging in unprofessional conduct.  D/e 20, exh. F-22.  Plaintiff

returned to work on April 6, 2018, on which date she was presented with a contract entitled "Last Chance Agreement" that she was told she had to sign as a condition of being allowed to return to work. The Last Chance Agreement stated that the raise offer made on March 1, 2018, was rescinded in lieu of additional discipline for Plaintiff's "unprofessional and unbecoming conduct, as well as the belligerent manner in which she treated a co-worker." D/e 22, p. 7. Plaintiff signed the Last Chance Agreement. On April 17, 2018, Plaintiff resigned from her job with the City.

### III. JURISDICTION

This Court has subject matter jurisdiction because Plaintiff's claims are based on Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, both of which are federal statutes. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Venue is proper because Defendants both reside in the Central District of Illinois and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Central District of Illinois. 28 U.S.C. § 1391(b).

## IV.  LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party.  Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012).  When ruling on a motion for summary judgment, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).

## V.  ANALYSIS

### A.  Defendants' Supplemental Affidavit and Additional Fact Are Struck.

Before addressing the Motion for Summary Judgment, the Court must first address Plaintiff's pending Motion to Strike

(d/e 25), which asks the Court to strike an "additional undisputed fact" included in Defendants' reply brief (d/e 24). Defendants' reply brief does assert a new "undisputed" fact and supports this new fact with a new affidavit. See d/e 24, p. 5. Neither the Federal Rules of Civil Procedure nor the Local Rules of the Central District of Illinois authorize the inclusion of additional facts in a Reply brief, and here it would be unfair to Plaintiff to allow the inclusion of a new assertedly undisputed fact to which Plaintiff would not have a chance to respond. See Hartley v. Wisconsin Bell, Inc., 930 F. Supp. 349, 353 (E.D. Wis. 1996), aff'd, 124 F.3d 887 (7th Cir. 1997) (striking additional affidavits filed along with reply brief, where defendant had not received permission to file them as required by the applicable local rules). The Court will therefore strike the Supplemental Affidavit of Director McCarty (d/e 24-1) and the "Additional Undisputed Fact" set forth in Defendants' reply brief.

**B.    Plaintiff Has Not Established That a Triable Issue of Fact Exists Regarding Her Employment Discrimination Claims.**

Plaintiff's Complaint alleges two separate employment discrimination claims. Count One alleges that the City denied her a promotion to the Purchasing Agent position because of her race in

violation of Title VII of the Civil Rights Act of 1964.  Count Two, which is brought against Mayor Langfelder in his individual capacity pursuant to 42 U.S.C. § 1983, alleges that Mayor Langfelder violated Plaintiff's Fourteenth Amendment right to equal protection of the law by denying her the same promotion.  D/e 22, p. 25.  As these two claims arise out of the same adverse employment decision, and as "[t]he legal standard for analyzing racial discrimination claims under Title VII and § 1983 is the same," Barnes v. Bd. of Trustees of Univ. of Illinois, 946 F.3d 384, 389 (7th Cir. 2020), the Court will analyze Plaintiff's discrimination claims together.

In evaluating a summary judgment motion on an employment discrimination claim, one "common, but not exclusive" approach used by plaintiffs to establish a "triable issue of intentional discrimination" is the burden-shifting approach created by the Supreme Court in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973).  David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508, 846 F.3d 216, 224 (7th Cir. 2017) (quoting Volling v. Kurtz Paramedic Servs., Inc., 840 F.3d 378, 383 (7th Cir. 2016)).  A plaintiff who

relies on the McDonnell Douglas framework must first establish a prima facie case of discrimination, at which point the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment decision, at which point the plaintiff must prove that the stated reason is a pretext. Purtue v. Wisconsin Dep't of Corr., 963 F.3d 598, 601–02 (7th Cir. 2020).

Here, Plaintiff has not relied on the McDonnell Douglas framework. Instead, Defendants urge the Court to apply McDonnell Douglas over Plaintiff's objection. Defendants argue that the burden-shifting approach remains the exclusive test for deciding employment discrimination claims on summary judgment. However, in the wake of Ortiz v. Werner Enterprises., Inc., 834 F.3d 760 (7th Cir. 2016), "a plaintiff need not use the *McDonell Douglas* framework." Igasaki v. Illinois Dep't of Fin. & Pro. Regul., 988 F.3d 948, 957 (7th Cir. 2021). After Ortiz, the "singular question" that a district court in the Seventh Circuit must address in deciding a motion for summary judgment in an employment discrimination case is "whether the plaintiff has introduced evidence that would 'permit a reasonable factfinder to conclude that the plaintiff's race,

ethnicity, sex, religion, or other proscribed factor caused the . . .

adverse employment action.'" Purtue, 963 F.3d at 602 (quoting

Johnson v. Advocate Health & Hosps. Corp., 892 F.3d 887, 894 (7th

Cir. 2018)). Accordingly, the Court will "ask whether the totality of

the evidence shows discrimination, eschewing any framework or

formula." Igasaki, 988 F.3d at 958.

The evidence presented by Plaintiff in support of her

discrimination claims includes: (1) statements by Mayor Langfelder

regarding his desire to hire black employees to make Springfield's

municipal government more representative of the city's

demographics; (2) evidence allegedly showing that Defendants'

stated reason for promoting Kassandra Wilkin rather than Plaintiff

was pretextual; and (3) evidence that the process Defendants

followed in appointing a Purchasing Agent was different from the

process outlined in Springfield's Municipal Code.

### 1. Defendants' Desire to Hire and Promote Minority Employees Is Not Evidence of Discriminatory Intent Towards Plaintiff.

Mayor Langfelder made statements evincing a desire to

increase the diversity of Springfield's city government, with the

"ultimate goal" of making the city government representative of the demographics of the City of Springfield itself.  See d/e 20, exh. D, p. 13.  During Mayor Langfelder's 2019 campaign for re-election, Mayor Langfelder stated that his administration was "already" moving towards a municipal government that reflected Springfield's demographics, that he had already appointed five individuals who were women and/or racial minorities to positions in city government, and that his administration would achieve some form of proportional representation within the next four years.  D/e 20, exh. F-24, p. 2.  Plaintiff also points to an "Affirmative Action Plan" adopted by the City in 2013, which announces the City's intent to remedy the "underutilization" of certain groups by bringing members of various protected groups into the City's workforce. D/e 22-2, p. 5.  Finally, Plaintiff points to the fact that Sandy Robinson was black and that before hiring Wilkin to replace Robinson Mayor Langfelder attempted to hire Darryl Harris, who is also black, as Purchasing Agent.  D/e 22, p. 30.

     While the existence of an affirmative action plan may be relevant to proving discriminatory intent in an employment

discrimination case, "[t]he mere existence of an affirmative action policy is, however, insufficient to prove that the [employer] actually intentionally discriminated against [the employee]." Rudin v. Lincoln Land Cmty. Coll., 420 F.3d 712, 722 (7th Cir. 2005) (quoting Whalen v. Rubin, 91 F.3d 1041, 1045 (7th Cir.1996)) (alterations in original). Here, Plaintiff has not presented any evidence connecting Mayor Langfelder's statements, or the City's affirmative action plan, to discrimination against white employees or applicants. Rather, Plaintiff simply assumes that any plan for affirmative action must necessarily involve the selection of less qualified minority applicants at the expense of better qualified white applicants. On its face, however, the City's affirmative action plan is intended to "ensure that all employment practices are free of" discrimination on the basis of race and other protected characteristics. D/e 22-2, p. 7. The plan is premised on the assumption that removing discrimination will naturally result in a representative municipal government, via "optimal utilization" of an existing untapped well of qualified minority candidates. Id. The goal of the plan is to achieve a representative municipal

government, but the plan does not set any quotas for hiring or retention of minority candidates.

The only one of Mayor Langfelder's comments that could be construed as inconsistent with the plan's explicitly anti-discriminatory hiring goals is his statement that a job or promotion "should go to the minority candidate" where the minority candidate had similar qualifications or better qualifications than a white applicant. Id. at p. 51. A jury could reasonably infer from this statement that Mayor Langfelder was willing to rely on race to break a tie between otherwise equally qualified applicants. But the use of race to break a tie between otherwise equally qualified applicants, in order to remedy an egregious racial imbalance in a municipal workforce, does not violate Title VII or the Constitution. See Johnson v. Transportation Agency, Santa Clara Cty., Cal., 480 U.S. 616, 635 (1987) (affirmative action plan that used sex as one factor did not violate Title VII where it was aimed at remedying a sex imbalance in a local government work force, announced goals rather than "quotas that must be met," and did not create an "absolute bar" to advancement of male employees).

Nor does the fact that Mayor Langfelder attempted to replace Sandy Robinson with another black candidate, Darryl Harris, before turning to Wilkin give rise to a reasonable inference of discrimination.  Plaintiff does point out that, of the fourteen City employees employed at the "Officials and Administrators" level in 2017, Sandy Robinson was the only one who was black, and that Wilkin was the only black employee in the "Officials and Administrators" category in 2019.  D/e 22, p. 23–24.  However, the fact that the City hired very few black employees to fill high-level positions tends, if anything, to undermine Plaintiff's argument that Mayor Langfelder was inordinately concerned with hiring black employees.  Plaintiff does not offer any reason why Mayor Langfelder might have been especially interested in hiring a black person to fill the Purchasing Agent position, as opposed to any other position in his administration.  Construing the low number of black City officials as evidence of discrimination against a white employee, because Mayor Langfelder offered one particular position to three black candidates in a row, would require an unjustifiable inferential leap.  See E.-Miller v. Lake Cty. Highway Dep't, 421 F.3d

558, 564 (7th Cir. 2005) (refusing to take the "huge inferential leap" of inferring race discrimination based on minor incidents that "could easily have been accidental"); Springer v. Durflinger, 518 F.3d 479, 485 (7th Cir. 2008) (affirming summary judgment where the circumstantial evidence presented was "totally unremarkable because of its normalness")

### 2. Plaintiff Has Not Shown that Defendants' Stated Reasons for Appointing Wilkin Are Pretextual.

Plaintiff also argues, citing Loudermilk v. Best Pallet Co., LLC, 636 F.3d 312 (7th Cir. 2011), that Defendants' motion for summary judgment should be denied because a jury could find that the stated reasons for their hiring decision are pretextual or "fishy." D/e 22, pp. 31–32.

"One can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision." Appelbaum v. Milwaukee Metro. Sewerage Dist., 340 F.3d 573, 579 (7th Cir. 2003). Here, however, Defendants' non-discriminatory explanations for their decision to hire Wilkin have not changed and are not inconsistent. Throughout the course of this litigation, Defendants have maintained that they hired Wilkin

to be the Purchasing Agent because of her qualifications—specifically, her educational background and her experience working for the City's municipal utility company, CWLP.[1]  See d/e 20, p. 14; d/e 20, exh. A, p. 34; exh. D, p. 50.  Mayor Langfelder gave these same two reasons for the hiring decision to Plaintiff when he met with her on March 1, 2018, to explain that she would not be getting the appointment and to offer her a $5,000 raise instead.  See d/e 22, p. 5 ("Mayor Langfelder indicated he was impressed with Ms. Wilkin's work ethic . . . and that she had gotten a master's degree while working for the City."); d/e 22, p. 12 ("Mayor Langfelder told Plaintiff that he believed Ms. Wilkin, who had spent time working at City, Water, Light & Power . . . was his choice for Purchasing Agent because he wanted to merge City purchasing with CWLP purchasing.").  Wilkin had a bachelor's degree and a master's degree when she was appointed Purchasing Agent, both of which she had earned while working full time for the

---

[1] Plaintiff argues that Wilkin's CWLP experience is irrelevant because it "is not something that the City contends it is relying upon in making its decision to promote Wilkin."  D/e 22, p. 12. However, the City repeatedly references Wilkin's CWLP experience as one of the qualifications that led to Mayor Langfelder's hiring decision in its Motion for Summary Judgment.  See d/e 20, p. 14 ("The Mayor also indicated other qualifications of Ms. Wilkin that he prioritized in making his selection. He valued her prior experience working in the utilities department, CWLP, since he had plans to consolidate that department's purchasing with the City's.").

City.  D/e 20, p. 14.  Mayor Langfelder asserts that he had plans to consolidate CWLP's purchasing department with the City's purchasing department and wanted a Purchasing Agent with experience at CWLP to oversee this transition.  See d/e 20, p. 14; d/e 20, exh. A, p. 34; exh. D, p. 50.

Plaintiff asserts that the City's reasons appear to be "manufactured completely after the fact" because Mayor Langfelder informed his OBM director of his decision to hire Wilkin on February 26, 2018.  D/e 22, p. 32.  Plaintiff points out that, as of February 26, 2018, Wilkin had not yet submitted her application and resume to Mayor Langfelder, Mayor Langfelder "did not understand" what Wilkin's role was in the Purchasing Department or what Plaintiff's role was in the purchasing department, and Mayor Langfelder was unaware of Plaintiff's own lack of academic credentials.  Id.

However, the fact that Wilkin did not formally apply for the Purchasing Agent position until early March does not mean that Mayor Langfelder was unaware of her qualifications in late February.  Plaintiff has not introduced any evidence that

contradicts Mayor Langfelder's testimony that he was aware of Wilkin's educational credentials and her employment history with CWLP when he decided to appoint her to the Purchasing Agent position. It is irrelevant whether, in making the hiring decision at issue here, Mayor Langfelder was also aware of Plaintiff's own qualifications and experience, and whether he compared them in a fair and thorough way with Wilkin's. As long as the non-discriminatory reasons relied on by Defendants are non-pretextual, it does not matter whether he made a wise or thoroughly considered hiring decision. See Lord v. High Voltage Software, Inc., 839 F.3d 556, 564 (7th Cir. 2016) ("Pretext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action.") (quoting Argyropoulos v. City of Alton, 539 F.3d 724, 736 (7th Cir. 2008)) (alteration in original).

Plaintiff also asserts that Defendants' reliance on Wilkin's qualifications is suspicious because Wilkin was clearly less well-qualified than Plaintiff. Plaintiff bases this assertion entirely on the fact that she had more experience in purchasing than Wilkin and

was Wilkin's supervisor prior to Wilkin's promotion. D/e 22, p. 32. None of the four Purchasing Agents who preceded Wilkin had worked in the City's Purchasing Department prior to their appointment as Purchasing Agent. <u>See</u> d/e 20, exh. H, ¶¶4–6. Given the clear evidence that Purchasing Department experience had not been a factor in the hiring of any recent Purchasing Agent, no reasonable jury could infer racial bias from Mayor Langfelder's decision to consider qualifications other than Purchasing Department experience.

### 3. Mayor Langfelder's Decision to Personally Select the Purchasing Agent Is Not Evidence of Discriminatory Intent.

Plaintiff also asserts that "Defendants clearly did not follow their own internal policies regarding how the position was to be filled" and that this departure is evidence of discrimination. D/e 22, p. 30. The Springfield Municipal Code provides that the City's Purchasing Agent shall be "appointed by the director of budget and management with the approval of the mayor and the advice and consent of the city council." Springfield Municipal Code, § 38.11. During the administration of Mayor J. Michael Houston,

Mayor Langfelder's predecessor, Mayor Houston's OBM Director did in fact decide who would be appointed as Purchasing Agent. D/e 20, exh. A, p. 31. Mayor Langfelder, however, preferred to choose his administration's Purchasing Agents himself, and Director McCarty agreed to cede decision-making authority and to rubber-stamp the Mayor's chosen candidate. <u>See</u> d/e 22, exh. B, p. 12; d/e 22-4, p. 30. Mayor Langfelder, with Director McCarty's assent, appointed Sandy Robinson, a black man, as his first purchasing agent, and later appointed Wilkin to replace Robinson when Robinson resigned. <u>See</u> d/e 20, exh. A, p. 20; d/e 20, exh. B, p. 10, 12; d/e 20, exh. E, p. 69.

Plaintiff's authority for the proposition that such a departure from internal policies is evidence of discrimination is <u>Rudin v. Lincoln Land Cmty. Coll.</u>, 420 F.3d 712 (7th Cir. 2005). In that case, a white candidate for a tenure track position at a community college was passed over in favor of a black candidate, and the Seventh Circuit held that there was a triable issue of fact regarding whether racial discrimination had taken place, in part because the college "did not follow its own internal procedures with respect to

the hiring process for the position." Id. at 723. However, an employer's departure from its own policies is not evidence of discrimination unless there is "evidence of a specific policy that is regularly enforced and followed in similar situations." Bagwe v. Sedgwick Claims Mgmt. Servs., Inc., 811 F.3d 866, 882 (7th Cir. 2016). In Rudin, the employer departed, not just from the letter of its internal procedures, but from the practices it had consistently used in the past. The Seventh Circuit reasoned that a jury could reasonably have inferred that the departure was for the purpose of fast-tracking the particular minority candidate who was chosen instead of the plaintiff. See Rudin, 420 F.3d at 723. Here, Plaintiff's assertion that a reasonable jury could infer that Mayor Langfelder "ignored the Municipal Code," d/e 22, pp. 32–33, because he wanted to maintain a consistent number of black employees is not plausible, as Mayor Langfelder's administration observed a consistent internal procedure over the course of two Purchasing Agent appointments, following the same procedure in replacing Sandy Robinson that was followed for the replacement of the previous Purchasing Agent, Jay Wavering.

To the extent that Plaintiff argues that a jury could infer that Mayor Langfelder departed from the Municipal Code in <u>both</u> the Robinson and Wilkin purchasing agent appointments because he wanted to first increase and then maintain the number of black employees at a certain level of municipal government, Plaintiff has not presented any evidence to support such a theory, other than evidence of the City's aspirational affirmative action policy and Mayor Langfelder's generalized desire to hire black employees.  Nor has Plaintiff presented evidence that Mayor Langfelder's policy of personally choosing his Purchasing Agent differed from his approach when making appointments to other similar positions. Accordingly, the Court finds that a jury could not reasonably infer discriminatory intent from Langfelder's policy of choosing his Purchasing Agent personally.

**C.     Plaintiff Has Not Established the Existence of a Triable Issue of Fact Regarding Retaliation.**

In addition to Plaintiff's claims alleging that she was not appointed Purchasing Agent because of her race, Plaintiff also claims that the City retaliated against her, in violation of Title VII,

by rescinding the $5,000 pay increase that she had previously been offered and placing her on a disciplinary "Last Chance Agreement."

Title VII prohibits an employer from retaliating against an employee for opposing an unlawful employment practice or participating in an investigation of an unlawful employment practice. 42 U.S.C. § 2000e–3(a). To survive a motion for summary judgment, a plaintiff who alleges retaliation must "produce enough evidence for a reasonable jury to conclude that (1) she engaged in a statutorily protected activity; (2) the [employer] took a materially adverse action against her; and (3) there existed a but-for causal connection between the two." Abrego v. Wilkie, 907 F.3d 1004, 1014 (7th Cir. 2018) (quoting Burton v. Bd. of Regents of Univ. of Wis. Sys., 851 F.3d 690, 695 (7th Cir. 2017)). The City does not dispute that Plaintiff engaged in a statutorily protected activity by alerting the City of her intent to file a discrimination claim with the EEOC and/or a lawsuit. Nor does the City deny that it took a materially adverse action against Plaintiff by rescinding her pay increase and placing her on a Last Chance Agreement. Therefore, the determinative question is whether a reasonable jury could find

that Plaintiff's protected activities were a but-for cause of the City's decision to discipline Plaintiff.

As evidence for causation, Plaintiff states that: (1) there was no nonretaliatory reason for the City's discipline; (2) Mayor Langfelder and other City employees have failed to offer adequate nonretaliatory reasons for why they disciplined Plaintiff; (3) Director McCarty has described some of Plaintiff's statements as "inappropriate," D/e 22, pp. 39–40; and (4) the timing of the discipline was suspicious because the incident that supposedly triggered the discipline took place on March 1, 2018, but the discipline was not administered until April 6, 2018, "very shortly after" Plaintiff threatened to file an EEOC complaint.

The City has offered a number of nonretaliatory reasons for its decision to discipline Plaintiff. Plaintiff left work for two and a half hours after learning that she had not been selected for the Purchasing Agent position, returning only after another City employee called her to tell her "[y]ou need to come back to work." D/e 20, exh. A, pp. 35–36. When Plaintiff returned, she had a loud phone conversation with Director McCarty in which she stated that

Wilkin had only been selected because she was black. When Wilkin overheard this conversation through the closed door of Plaintiff's office and entered to ask Plaintiff to lower her voice, Plaintiff told Wilkin, loudly and "not very nicely," to "get out of my office!" D/e 22, p. 6. After this altercation, the head of Human Resources came down to the Purchasing Department and asked Plaintiff to leave for the day. Id. Later, Plaintiff e-mailed two city aldermen to tell them that she had "really thought it was my turn" to be appointed Purchasing Agent and that Wilkin's application materials had included false statements. D/e 22, pp. 6–7. The Last Chance Agreement rescinds the offered pay increase "[d]ue to the unprofessional and unbecoming conduct, as well as the belligerent manner in which [Plaintiff] treated a co-worker." D/e 20, exh. F-18. This justification is consistent with the justification that the City now offers in its Motion for Summary Judgment. See d/e 20, pp. 18–19. Moreover, given the facts outlined above, there is no reason for the Court to assume that this justification is pretextual.

Plaintiff asserts that Mayor Langfelder "has never explained why" he made the decision to withdraw his salary increase offer.

When asked about the decision during his deposition, Mayor Langfelder stated that he did not recall rescinding the offered increase.  See d/e 20, exh. D, p. 59.  This lack of memory does not give rise to a reasonable inference of retaliatory motive.  Nor does the fact that the City's Human Resources Director expressed a belief during his deposition that a certain firsthand account of Plaintiff's outburst was written in a memorandum which did not emerge in discovery give rise to such an inference.  See d/e 22, p. 39 (explaining that the HR Director believed the decision to discipline Plaintiff had been spurred by a written memorandum, although no such memorandum has been produced).  The depositions in question were taken approximately two and a half years after the Last Chance Agreement was signed.

Disciplining an employee for insubordinate or belligerent behavior is not retaliation, even if the employee's behavior is motivated by the employee's belief that they have been discriminated against and takes place after an employee engages in protected activity.  See Lord v. High Voltage Software, Inc., 839 F.3d 556, 564 (7th Cir. 2016) (affirming grant of summary judgment

where employee was fired for insubordination after he sent a "testy email" accusing employer of retaliation and threatening to file a complaint with the EEOC).  Title VII does not prohibit the City from disciplining its employees for inappropriate comments, even if those comments relate in some way to protected activity.  Director McCarty did not state that it was inappropriate for Plaintiff to file or threaten to file an EEOC complaint or lawsuit alleging racial discrimination.  Rather, he stated that it was inappropriate for her to announce, in a raised voice that her future supervisor could hear through a closed door, that the future supervisor had only been promoted because she was black.  Plaintiff may disagree with Director McCarty's opinions on workplace etiquette, or with the opinions of the City's Human Resources Director on the same subject, but Title VII does not prohibit employers from disciplining employees for "foolish or trivial or even baseless" reasons, so long as the reasons are "honestly believed" and not a pretext for retaliation.  See id. (quoting Culver v. Gorman & Co., 416 F.3d 540, 546 (7th Cir. 2005)).

Finally, the timing of the City's decision to discipline Runkel cannot support a reasonable inference of retaliation, as "suspicious timing alone is almost always insufficient to survive summary judgment." Leitgen v. Franciscan Skemp Healthcare, Inc., 630 F.3d 668, 675 (7th Cir. 2011). While there may be "rare occasions" where the timing of a disciplinary action is so suspicious that summary judgment is inappropriate, Culver v. Gorman & Co., 416 F.3d 540, 546 (7th Cir. 2005), Plaintiff has not shown that the lapse of slightly more than a month between a workplace incident and a related disciplinary action is unusual. See Sledge v. Wilkie, 771 F. App'x 664, 667 (7th Cir. 2019) ("[A] time lag of five months, by itself, is insufficient to support an inference of retaliation."). Furthermore, Plaintiff has admitted that she received a "Final Notice of Disciplinary Action" on March 26, 2018, meaning that the actual lapse of time between the conduct giving rise to the City's disciplinary action and the City's decision to impose discipline was less than the 36-day period Plaintiff alleges. See d/e 22, p. 7.

# VI.   CONCLUSION

For the reasons stated above, Plaintiff's Motion to Strike (d/e 25) is GRANTED.  The Court STRIKES the "Additional Undisputed Fact" from Defendants' Reply to Plaintiff's Response (d/e 24).  The Clerk is DIRECTED to strike the supplemental affidavit of William McCarty (d/e 24-1) which is attached to Defendants' reply brief.  Furthermore, for the reasons stated above, Defendants' Motion for Summary Judgment (d/e 20) is GRANTED. The Clerk is DIRECTED to enter final judgment in favor of Defendants James O. Langfelder and City of Springfield and against Plaintiff Diane Runkel.  Any pending motions are DENIED as MOOT, any pending deadlines are TERMINATED, and any scheduled settings are VACATED.  This case is CLOSED.


**ENTERED:  July 14, 2021**

**FOR THE COURT:**

/s/ *Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**