IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DIANE RUNKEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-03206 |
| | ) | |
| CITY OF SPRINGFIELD and | ) | |
| JAMES O. LANGFELDER, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Plaintiff Diane Runkel's Motion to Amend Judgment (d/e 76). For the following reasons, Plaintiff's Motion to Amend Judgment (d/e 76) is GRANTED in part and DENIED in part.

## I. BACKGROUND

On August 16, 2018, Plaintiff Diane Runkel filed a three-Count Complaint (d/e 1) against Defendants City of Springfield and James Langfelder. Plaintiff alleged that the City of Springfield denied her a promotion because of her race in violation of 42 U.S.C. § 2000e-2(a)(1) (Count I). She also alleged that Langfelder denied

her a promotion because of her race in violation of the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983 (Count II). Lastly, she alleged that the City retaliated against her after engaging in activities protected under 42 U.S.C. § 2000e–3(a) (Count III).

After a four-day jury trial in December 2023, the jury found against Defendant City of Springfield on Counts I and III, awarding $100,000 in compensatory damages, no nominal damages, and no punitive damages. The jury found for Defendant James Langfelder on Count II, awarding $1 in nominal damages.

Plaintiff seeks to amend the judgment to include Plaintiff's: (1) lost wages with interest in the amount of $521,268, (2) health insurance differential in the amount of $24,538, (3) Illinois Municipal Retirement Fund ("IMRF") lost pension benefits in the amount of $79,476, and (4) tax differential in the amount of $44,998, for the total amended judgment, in addition to the $100,000 already awarded by the jury, to be $670,280. d/e 76, 77. In response, Defendant City of Springfield ("the City") argues that the Court should deny Plaintiff's request. d/e 81. Plaintiff filed her reply. d/e 86. For the reasons below, the Court amends the judgment to $745,816.00. The jury's verdict is otherwise upheld.

## II. ANALYSIS

In support of this Motion, Plaintiff submitted her affidavit and supporting financial documents.  The Court also has available the entire record from both the trial and the submissions on the motions for summary judgment.  An additional evidentiary hearing is therefore unnecessary.

### A. Back Pay and Prejudgment Interest

Back pay is "the difference between actual earnings for the period and those which she would have earned absent the discrimination by defendant."  Horn v. Duke Homes, Div. of Windsor Mobile Homes, Inc., 755 F.2d 599, 606 (7th Cir. 1985). "The district court has broad equitable discretion to fashion back pay awards to make the Title VII victim whole."  EEOC. v. Ilona of Hungary, Inc., 108 F.3d 1569, 1579 (7th Cir. 1997).  Once Plaintiff establishes a violation of Title VII, "there [is] a strong presumption that [Plaintiff] [is] entitled to a back pay award on the basis of what [Plaintiff] would have earned absent the discrimination."  Id.  When awarding backpay, the Court "must respect the findings implied by the jury's verdict," but is otherwise "vested with broad discretion to fashion a remedy for unlawful discrimination."  Id. at 1580.  For

backpay awards, the district court "must do its best to recreate the conditions and relationships that would have existed if the unlawful discrimination had not occurred." Id.

Plaintiff assumes that, based on averaging the annual salary paid to the Purchasing Agent from 2017 to 2022, she would have been paid $79,365 per year had she been hired as the City's Purchasing Agent. d/e 77, p. 5. Plaintiff further applies a 5.33% interest compounded annually, calculating the present value of $79,365 for April 17, 2018 to March 30, 2024, as $541,072. Id. at pp. 6–7. After subtracting $19,804, which represents the $14,500 she earned in income since leaving the City with a 5.33% interest rate, Plaintiff claims her overall wage losses are $521,268. Id. at p. 7.

### 1. The City Has Not Established Its Affirmative Defense Regarding Mitigation of Damages.

The City argues that Plaintiff must be denied back pay because she resigned from her Assistant Purchasing Agent position on April 17, 2018, and failed to mitigate her damages. d/e 81, p. 5. Plaintiff resigned from her position on April 17, 2018. d/e 77, p. 6; d/e 81, p. 5; see EEOC v. Costco Wholesale Corp., No. 14 C 6553,

2017 WL 4570840, at *6 (N.D. Ill. May 15, 2017) ("The Seventh Circuit has since made clear that an employee is not constructively discharged unless she actually resigns; simply taking leave or failing to return to work is not sufficient.") (citing cases).  Plaintiff's resignation alone does not foreclose her entitlement to a back pay award.  "A victim of discrimination that leaves his or her employment as a result of . . . discrimination must show either an actual or constructive discharge in order to receive the equitable remedy of reinstatement, or back and front pay in lieu of reinstatement."  Hertzberg v. SRAM Corp., 261 F.3d 651, 659 (7th Cir. 2001).  Here, the jury found that Plaintiff was constructively discharged and, had she not been constructively discharged, she would have continued working for the City until March 2024.  d/e 64.

"Once a plaintiff has established the amount of damages she claims resulted from her employer's conduct, the burden of going forward shifts to the defendant to show that the plaintiff failed to mitigate damages or that damages were in fact less than the plaintiff asserts."  Hutchison v. Amateur Elec. Supply, Inc., 42 F.3d 1037, 1044 (7th Cir. 1994).  The City, to prevail on its affirmative

defense that the plaintiff failed to mitigate damages, must prove
"both that the [plaintiff] was not reasonably diligent in seeking other
employment, and that with the exercise of reasonable diligence
there was a reasonable chance the [plaintiff] might have found
comparable employment." Wheeler v. Snyder Buick, Inc., 794 F.2d
1228, 1234 (7th Cir. 1986).

The City has established the first prong of its affirmative
defense and proven that Plaintiff failed to use reasonable diligence
in seeking employment after July 15, 2019.  The City argues that
Plaintiff failed to seek alternative employment.  d/e 81, p. 6–7.  The
supporting documents submitted by Plaintiff are silent with regards
to whether Plaintiff submitted applications, or "checked want ads,
registered with employment agencies, discussed employment
opportunities with friends and acquaintances." Sprogis v. United
Air Lines, Inc., 517 F.2d 387, 392 (7th Cir. 1975).  Plaintiff testified
that she intended to work until March 2024, which would have
been when she could have drawn her full retirement benefit from
Social Security.  December 5, 2023 Trial Transcript, 159:3–18.  But,
instead of seeking alternative employment from the City until her
desired retirement date, Plaintiff chose to retire early.  Indeed,

Plaintiff's affidavit states that she earned $14,500 in wages since her retirement while working for Plaintiff Concrete Contractors, Inc., a business owned by her husband.  d/e 76, Ex. 1.  "[S]elf-employment, if reasonable, counts as permissible mitigation."  Smith v. Great Am. Restaurants, Inc., 969 F.2d 430, 438 (7th Cir. 1992).  However, Plaintiff received sporadic wages from June 1, 2018 to July 15, 2019: $500 on June 1, 2018; $5,000 on June 9, 2018; $500 on June 29, 2018; $500 on July 24, 2018; $500 on August 2, 2018; $1,000 on September 3, 2018; $1,500 on November 9, 2018; $1,500 on November 29, 2018; $500 on April 15, 2019; $1,000 on May 12, 2019; $500 on May 30, 2019; $1,500 on July 15, 2019.  d/e 76, Ex. 2.  Moreover, according to Plaintiff's submissions, Plaintiff has not earned any income since July 15, 2019.  d/e 76, Ex. 2; d/e 77, p. 7.  Plaintiff failed to use reasonable diligence to find comparable employment after July 15, 2019.

However, the City has offered no evidence to satisfy the second prong of the mitigation defense: that "with the exercise of reasonable diligence there was a reasonable chance the [plaintiff] might have found comparable employment."  Wheeler, 794 F.2d at 1234.  Although the City asserts that Plaintiff was offered a Last

Chance Agreement, allowing her to return to work and to remain in her position, the jury found that Plaintiff was constructively discharged.  d/e 81, p. 5; d/e 64.  Ultimately, failure to mitigate is an affirmative defense, and the burden rightfully rests on the defense.  EEOC v. Gurnee Inn Corp., 914 F.2d 815, 818 (7th Cir. 1990) ("We emphasize that the employer bears the burden of proving a failure to mitigate.").  The City was required to prove that there was a reasonable chance that Plaintiff might have found comparable employment, and the City failed to carry its burden.  See, e.g., Gracia v. Sigmatron Int'l, Inc., 130 F. Supp. 3d 1249, 1257 (N.D. Ill. Sept. 17, 2015) (finding that employer failed to submit any evidence on the availability of work comparable to plaintiff's lost position in the months after her discharge); Meyer v. United Air Lines, Inc., 950 F. Supp. 874, 877–78 (N.D. Ill. Jan. 16, 1997) (finding employer satisfied its burden to show that plaintiff may have found comparable employment by identifying hundreds of available legal positions consistent with plaintiff's previous work and comparable to plaintiff's prior position with employer).  Plaintiff's back-pay award will not be reduced for failure to mitigate.

As a result, Plaintiff should be awarded backpay for the time from April 17, 2018, to the date of entry of judgment, December 8, 2023.

### 2. Calculation of the Back Pay Award

Because the City did not establish that Plaintiff failed to mitigate damages, Plaintiff is entitled to back pay from the date she was constructively discharged, April 17, 2018, through March 2024. The City argues that the Court should base Plaintiff's back pay on Plaintiff's salary when she resigned from her position as an Assistant Purchasing Agent, not the Purchasing Agent position's salary. d/e 81, p. 4.

In determining the proper award of back pay, a court must make sure that any award is not speculative and does not put the plaintiff in a better position than she was before her termination. See Ilona of Hungary, Inc., 108 F.3d at 1580. The Seventh Circuit has "set down three general rules: (1) unrealistic exactitude is not required; (2) ambiguities in what an employee . . . would have earned but for discrimination should be resolved against the discriminating employer; [and] (3) the district court, far closer to the facts of the case than [the Court of Appeals] can ever be, must be

granted wide discretion in resolving ambiguities." <u>Stewart v. Gen. Motors Corp.</u>, 542 F.2d 445, 452 (7th Cir. 1976).

The Court disagrees that Plaintiff "speculates" that she would have received the promotion absent discrimination and "further speculates that she would have earned $76,365 annually had she received the position." d/e 81, p. 4. To the contrary, the jury, in finding in favor of Plaintiff with respect to her race discrimination claim, found that Plaintiff would have received the promotion. With respect to Count I, the Court instructed the jury that:

> To determine that Plaintiff was passed over for the promotion because of her race, **you must decide that the City would have promoted Plaintiff over Wilkin** had Plaintiff not been Caucasian but everything else had been the same.

d/e 69, p. 20 (emphasis added).

Here, Plaintiff provided the wages of Purchasing Agents for the years of 2017 to 2022, with supporting documentation. d/e 77, p. 5. Because the jury found that Plaintiff would have received the promotion absent race discrimination, the Court finds it appropriate to award Plaintiff backpay of $79,365 per year, prorated for the year, had she been hired at the City's Purchasing Agent. Furthermore, since Plaintiff has left the City, she has earned

$14,500 in income.  See d/e 76, ¶¶ 2–3; Ex. 1.  The present value of
the wages earned by Plaintiff since leaving the City, compounded
monthly, is $18,605.33.  Accordingly, the total backpay, is
calculated as follows, for a total of $429,145.55.

**Prorated Backpay**

| Start Date | End Date | Salary | % of Year | Earnings |
|---|---|---|---|---|
| 4/17/18 | 12/31/18 | $79,365 | 70.56% | $55,996.42 |
| 1/1/19 | 12/31/19 | $79,365 | 100% | $79,365.00 |
| 1/1/20 | 12/31/20 | $79,365 | 100% | $79,365.00 |
| 1/1/21 | 12/31/21 | $79,365 | 100% | $79,365.00 |
| 1/1/22 | 12/31/22 | $79,365 | 100% | $79,365.00 |
| 1/1/23 | 12/8/23 | $79,365 | 93.61% | $72,294.46 |
|  |  |  | Total | **$447,750.88** |

**Wages Earned by Plaintiff Since Leaving the City**

| Date | Wages | Accrued Months | Rate (compounded monthly) | Present Value |
|---|---|---|---|---|
| 6/1/18 | $500 | 66 | 5.0255% | $654.77 |
| 6/9/18 | $5,000 | 65 | 5.0255% | $6,521.04 |
| 6/29/18 | $500 | 65 | 5.0255% | $652.10 |
| 7/24/18 | $500 | 64 | 5.0255% | $649.44 |
| 8/2/18 | $500 | 64 | 5.0255% | $649.44 |
| 9/3/18 | $1,000 | 63 | 5.0255% | $1,293.59 |
| 11/9/18 | $1,500 | 60 | 5.0255% | $1,916.75 |
| 11/29/18 | $1,500 | 60 | 5.0255% | $1,916.75 |
| 4/15/19 | $500 | 55 | 5.0255% | $626.00 |
| 5/12/19 | $1,000 | 54 | 5.0255% | $1,246.89 |
| 5/30/19 | $500 | 54 | 5.0255% | $623.44 |
| 7/15/19 | $1,500 | 52 | 5.0255% | $1,855.11 |
| **Total** |  |  |  | **$18,605.33** |

## B. Prejudgment Interest

Plaintiff seeks prejudgment interest on her award of back pay. Prejudgment interest is presumptively available on a back pay award.  See Shott v. Rush–Presbyterian–St. Luke's Med. Ctr., 338 F.3d 736, 745 (7th Cir. 2003) ("in most cases prejudgment interest is an element of full compensation"); Gorenstein Enter., Inc. v. Quality Care–U.S.A., Inc., 874 F.2d 431, 436 (7th Cir. 1989) ("The time has come, we think, to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay.").

Unlike post-judgment interest, "there is no statutory rate of prejudgment interest."  Cement Div., Nat'l Gypsum Co. v. City of Milwaukee, 144 F.3d 1111, 1114 (7th Cir. 1998).  Determining an applicable rate is left to the district court's discretion based on the "particular circumstances of the case," although "the best starting point is to award interest at the market rate, which means an average of the prime rate for the years in question."  Id. (citing Cement Div., Nat. Gypsum Co. v. City of Milwaukee, 31 F.3d 581, 587 (7th Cir. 1994)).  The prime interest rate includes the period of

time from date of injury through entry of judgment.  Id. at 1117.

The City does not make any argument regarding interest.

The Court, in its broad discretion, finds the use of the average prime rate, compounded monthly, proper.  See, e.g. Gracia v. Sigmatron Int'l, Inc., 130 F. Supp. 3d 1249, 1263 (N.D. Ill. Sept. 17, 2015) (using 3.25 percent (compounded monthly) because "that was the prime rate for almost the whole prejudgment period in this case, except for a few weeks when it was 3.61 percent"); Sheils v. GateHouse Media, Inc., No. 12 CV 2766, 2015 WL 6501203, at *10 (N.D. Ill. Oct. 27, 2015) (using the average of the prime rate in effect for the years in question, which was 3.25 percent); Geraty v. Village of Antioch, No. 09 C 6992, 2014 WL 1475574, at *3 (N.D. Ill. April 15, 2014) ("Courts generally apply the monthly average prime rate."); see also Am. Nat. Fire Ins. Co., 325 F.3d at 938 (""Compound interest generally more fully compensates a plaintiff[.]").

The average prime rate is 5.0255% based on the time frame in question—April 17, 2018, the date of constructive termination, to the date of entry of judgment, December 8, 2023.  See Washington v. Off. of the State Appellate Def., No. 12 C 8533, 2016 WL

3058377, at *9 (N.D. Ill. May 31, 2016) (compounding prejudgment interest monthly until date of judgment); Board of Governors, Federal Reserve System, Historical Data, Selected Interest Rates, https://www.federalreserve.gov/datadownload/Choose.aspx?rel=H 15 (last visited May 2, 2024) (download spreadsheet for "Bank prime loan" for "monthly" data from April 2018 to December 2023); d/e 71.  The Court notes that usage of the monthly average prime rate contributes to a higher amended judgment amount than what Plaintiff has asked for.

Accordingly, the present value of prejudgment interest, compounded monthly, is $79,420.08.

## Prejudgment Interest

| Start Date | End Date | Principal Earnings (prorated) | Accrued Months | Rate (compounded monthly) | Present Value | Interest (Present Value – Principal Earnings) |
|---|---|---|---|---|---|---|
| 4/17/18 | 12/31/18 | $55,996.42 | 67 | 5.0255% | $73,630.23 | $17,633.81 |
| 1/1/19 | 12/31/19 | $79,365.00 | 59 | 5.0255% | $101,001.63 | $21,636.63 |
| 1/1/20 | 12/31/20 | $79,365.00 | 47 | 5.0255% | $96,168.67 | $16,803.67 |
| 1/1/21 | 12/31/21 | $79,365.00 | 35 | 5.0255% | $91,566.96 | $12,201.96 |
| 1/1/22 | 12/31/22 | $79,365.00 | 23 | 5.0255% | $87,185.45 | $7,820.45 |
| 1/1/23 | 12/8/23 | $72,294.46 | 11 | 5.0255% | $75,618.01 | $3,323.55 |
| | | | | **Total** | **$525,170.96** | **$79,420.08** |

## C. Health Insurance Differential

Plaintiff requests an award for the difference in health insurance costs since she left the City.  Plaintiff calculates that her

costs are now $300.00 greater per month.  d/e 77, p. 7.  She seeks a health insurance differential, including interest at 5.33%, of $24,538.  Id. at p. 8.

Lost health insurance benefits are fringe benefits properly included in a back pay award.  See EEOC v. Custom Companies, Inc., Nos. 02 C 3768, 03 C 2293, 2007 WL 734395, at *14 (N.D. Ill. March 8, 2007).  Plaintiff must show that she either incurred expenses in securing alternative insurance coverage *or* incurred medical expenses that would have been covered under the employer's insurance program.  Kossman v. Calumet Cty., 800 F.2d 697, 703–04 (7th Cir. 1986), overruled on other grounds, Coston v. Plitt Theatres, Inc., 860 F.2d 834, 835–36 (7th Cir. 1988).

The City argues that there is insufficient evidence of a $300 per month differential and that Plaintiff would have continued to have the same health insurance coverage had she not voluntarily resigned her position.  However, as discussed, the jury found that Plaintiff was constructively discharged.  d/e 64.

Plaintiff does not state whether she incurred a medical expense while uninsured.  See Kossman, 800 F.2d at 703–04.  As a result, the Court looks to see if Plaintiff shows that she incurred

expenses in securing alternative insurance coverage.  Id.  Plaintiff

alleges that her monthly health insurance differential is $300.  d/e

76, Ex. 1, ¶ 14.  The Court finds that Plaintiff has provided

sufficient evidence that a health insurance differential exists.

Plaintiff alleges that after she left the City in 2018, she paid

$457.17 per month through the Illinois Municipal Retirement Fund

(IMRF) for health insurance for herself.  d/e 6, Ex. 5, p. 2; d/e 76,

Ex. 1, ¶ 10.  In 2023, Plaintiff alleges that she paid $523.27 per

month through IMRF for her individual health care.  d/e 76, Ex. 5,

p. 3.  As an individual, the cost of health insurance through the

City for its employees was $81.31 per pay period (or $162.62 per

month) in 2018 for single point of service (POS) coverage without

wellness screening and $98.62 per pay period (or $197.24 per

month)[1] in 2024 for single POS coverage without wellness

screening.  Id. at pp. 4, 5.  As calculated below, the difference

---

[1] Plaintiff cites to a City employee health insurance cost of $89.65 per pay
period (or $179.30 per month) in 2024 in her affidavit.  d/e 76, Ex. 1, ¶ 13.
This amount reflects the City employee medical premium for a single, point of
service, with wellness plan.  However, Plaintiff also cites to a City employee
health insurance cost of $81.31 per pay period (or $162.62 per month) in 2018
in her affidavit.  Id. at ¶ 12.  This amount reflects the City employee medical
premium for a single, point of service, without wellness plan.  For an accurate
comparison, the Court has adopted the 2024 figure for a City employee medical
premium for a single, point of service, with wellness plan.

between Plaintiff's health insurance costs and a city employee's

health insurance costs in 2018 was $294.55 and in 2024 was

$326.03.  These calculations support Plaintiff's assertion that the

health insurance differential is approximately $300.

| Year | Plaintiff's Health Insurance Cost per Month (post-employment with the City as an individual) | City Employee's Health Insurance Cost per Month (Single, POS, without wellness) | Difference |
|------|------|------|------|
| 2018 | $457.17 | $162.62 | $294.55 |
| 2024 | $523.27 | $197.24 | $326.03 |

The City argues that the differential should be based on

$457.17, her health insurance deductions from IMRF when she

quit, and $339.78, what she was paying for health insurance each

month when she quit her position with the City.  The City argues

that the differential should be $117.39 per month because Plaintiff

offers no evidence as to when her husband went on Medicare or

that her insurance for him would not have remained primary and

Medicare secondary.  Such information, however, is unnecessary.

Plaintiff has provided documentation demonstrating that post-

employment with the City, she has paid $457.17 from June 1, 2018

to June 30, 2018 and $523.27 from December 1, 2023 to December 31, 2023 for individual health insurance.  d/e 76, Ex. 5, pp. 2, 3.

The Court also applies an interest rate on the health insurance differential.  Rather than the 5.33% proposed by Plaintiff, the Court, in its broad discretion, finds the use of the monthly average prime rate proper.  See supra Section III.B.  Accordingly, the total health care differential amount, prorated for the year and including interest compounded monthly, is calculated as follows, for a total of $23,916.66.

| Start Date | End Date | Yearly Health Care Differential ($300/month x 12 months) | % of Year | Prorated Health Care Differential |
|---|---|---|---|---|
| 4/17/18 | 12/31/18 | $3,600 | 70.56% | $2,540 |
| 1/1/19 | 12/31/19 | $3,600 | 100% | $3,600 |
| 1/1/20 | 12/31/20 | $3,600 | 100% | $3,600 |
| 1/1/21 | 12/31/21 | $3,600 | 100% | $3,600 |
| 1/1/22 | 12/31/22 | $3,600 | 100% | $3,600 |
| 1/1/23 | 12/8/23 | $3,600 | 93.61% | $3,370 |

| Accrued Months | Rate (compounded monthly) | Present Value (Prorated Health Care Differential + Interest) |
|---|---|---|
| 67 | 5.0255% | $3,339.87 |
| 59 | 5.0255% | $4,581.44 |
| 47 | 5.0255% | $4,362.21 |
| 35 | 5.0255% | $4,153.48 |

| 23 | 5.0255% | $3,954.74 |
| 11 | 5.0255% | $3,524.93 |
|  | **Total** | **$23,916.66** |

### D. Illinois Municipal Retirement Fund Contributions

Plaintiff requests an award of $79,476 for lost pension benefits from the Illinois Municipal Retirement Fund (IMRF). d/e 77, p. 9. "In order to make plaintiffs whole, a discharged employee should be compensated for pension benefits lost through the wrongful termination." Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1202 (7th Cir. 1989). The IMRF is a multi-employer agent public employee retirement system that provides retirement benefits. See d/e 77, p. 9. City employees are required to contribute 4.5% of their annual salary and that "statute requires employers to contribute the amount necessary, in addition to member contributions, to finance the retirement coverage of its own employees." d/e 77, Ex. 6, p. 93. The City paid the following annual rates for fiscal years that end in February:

| Year | Contributions as a Percentage of Covered Payroll |
| --- | --- |
| 2018 | 17.87% |
| 2019 | 16.12% |
| 2020 | 13.74% |
| 2021 | 16.38% |
| 2022 | 15.62% |

| | |
|---|---|
| 2023 | 12.77% |

Id. at p. 114.

Rather than using Plaintiff's assumed salary of $79,500, the Court finds that the appropriate salary to base her IMRF benefits on is $79,365.  See supra Section III.A.2.  Accordingly, the total lost pension benefit amount, prorated for the year and including interest compounded monthly, is calculated as follows, for a total of $76,859.13.

| Start Date | End Date | Salary | % of Year | Prorated Salary | City Contribution Rate (Annual) | City Contribution Amount |
|---|---|---|---|---|---|---|
| 4/17/18 | 12/31/18 | $79,365 | 70.56% | $55,996.42 | 16.12% | $9,026.62 |
| 1/1/19 | 12/31/19 | $79,365 | 100% | $79,365.00 | 13.74% | $10,904.75 |
| 1/1/20 | 12/31/20 | $79,365 | 100% | $79,365.00 | 16.38% | $12,999.99 |
| 1/1/21 | 12/31/21 | $79,365 | 100% | $79,365.00 | 15.62% | $12,396.81 |
| 1/1/22 | 12/31/22 | $79,365 | 100% | $79,365.00 | 12.77% | $10,134.91 |
| 1/1/23 | 12/8/23 | $79,365 | 93.61% | $72,294.46 | 12.77% (assumed) | $9,487.40 |

| Accrued Months | Rate (compounded monthly) | Present Value of IMRF |
|---|---|---|
| 67 | 5.0255% | $11,869.19 |
| 59 | 5.0255% | $13,877.62 |
| 47 | 5.0255% | $15,752.42 |
| 35 | 5.0255% | $14,302.76 |
| 23 | 5.0255% | $11,133.58 |
| 11 | 5.0255% | $9,923.56 |
| | **Total** | **$76,859.13** |

**E. Tax Differential**

Finally, Plaintiff asks for a tax differential award to offset the increased tax burden she will incur as a result of receiving a lump sum award in this case of her back pay.  A tax-component award to offset the increased burden that will result from the lump-sum of her backpay is appropriate in discrimination cases.  EEOC v. N. Star Hosp., Inc., 777 F.3d 898, 904 (7th Cir. 2015) ("Put simply, without the tax-component award, [a plaintiff] will not be made whole, a result that offends Title VII's remedial scheme.").  The district court has "wide discretion in computing tax-component awards" and in fashioning an award that "fits the circumstances particular to the case."  Vega v. Chi. Park Dist., 12 F.4th 696, 707 (7th Cir. 2021) (internal quotation marks and citations omitted).  The Seventh Circuit further cautioned that "it would be wise for district courts to show their work if and when they adjudge similar tax-component awards in the future."  N. Star Hosp., 777 F.3d at 904.

Here, the Court has determined that Defendant City of Springfield owes Plaintiff $429,145.55 in unpaid back wages from April 17, 2018 to December 8, 2023.  See supra Section III.A.2.

Had Plaintiff received that amount spread out over the April 17, 2018 to December 8, 2023 period, she would have paid less in taxes than she will now have to due to the increased marginal taxation as certain income thresholds are crossed.

Plaintiff seeks a tax differential of $44,998 based on back pay, prejudgment interest, the health insurance differential, and the IMRF contributions.  See d/e 77, p. 12.  However, the Court finds that a tax differential is appropriate only on Plaintiff's back pay, excluding prejudgment interest.  By receiving the present cash value of the prejudgment interest, the health insurance differential, and the IMRF contributions, Plaintiff is already benefitting by having access to money she ordinarily would not have.

Plaintiff has not provided information regarding her annual salary from 2018 to 2020 as reported to the IRS.  Because Plaintiff has failed to provide the Court with the financial information necessary to make the calculation for Plaintiff's negative tax consequences for 2018 to 2020, the Court denies a tax differential for those years.  See McKnight v. Gen. Motors Corp., 973 F.2d 1366, 1372 (7th Cir. 1992) ("[W]hen a party fails to provide the district court with the essential data necessary to calculate a

reasonably certain [equitable damages] award, the court may deny the request.").

In 2024, Plaintiff will have to report as taxable income the $447,750.88 in back pay.  <u>See</u> supra Section III.A.2.  Assuming Plaintiff's annual joint income is approximately $100,000 like previous years, Plaintiff's anticipated income on her 2024 tax-year filing will be $547,750.88.  <u>See</u> d/e 76, Ex. 1, ¶ 6.  This places her in the 35% tax bracket according to IRS classifications.  <u>See</u> Internal Revenue Service, Section 3, Table 1, https://www.irs.gov/irb/2023-48_IRB#REV-PROC-2023-34 (last accessed May 7, 2024); Internal Revenue Service, Publication 505 – Tax Withholding and Estimated Tax, Cat. No. 15008E (March 5, 2024), p. 16.

Had Plaintiff remained employed by the City until December 8, 2023, she would have received a salary of $79,365 in 2021 and 2022; and $72,294.46 in 2023.  <u>See</u> <u>supra</u> Section III.A.2 (prorating salary). According to Plaintiff's income tax returns, her annual joint income was $102,224 in 2021, $96,038 in 2022, and $97,773 in 2023.  d/e 76, Ex. 4, pp. 28, 30.  As a result, she would have reported the following annual joint income if she remained

employed with the City: $181,589 in 2021, $175,403 in 2022, and $177,138 in 2023.  This would place her in the following tax brackets: 24% in 2021, 22% in 2022, and 22% in 2023.  See Internal Revenue Service, Tax and Earned Income Credit Tables, Cat No. 24327A (Aug. 22, 2023), p. 15; Internal Revenue Service, Tax and Earned Income Credit Tables, Cat. No. 24327A (Sept. 27, 2022), p. 15; Internal Revenue Service, Cat. No. 24811V (Dec. 21, 2021), p. 77.

Accordingly, the total tax differential is calculated as follows, based on publicly available tax-rate data.

| Year | Total Taxable Income (A) | Multiplication Amount (B) | Subtraction Amount (C) | Tax Due (A x B - C) |
|---|---|---|---|---|
| 2021 | $181,589 | 24% | $11,958 | $31,623.36 |
| 2022 | $175,403 | 22% | $8,766 | $29,822.66 |
| 2023 | $170,067 | 22% | $9,385 | $28,029.84 |
| Total | | | | $89,475.86 |

| Year | Anticipated Joint Income (A) | Lump Sum Award of Backpay (B) | Total Taxable Income (C = A+B) | Multiplication Amount (D) | Subtraction Amount (E) | Tax Due (C x D - E) |
|---|---|---|---|---|---|---|
| 2024 | $100,000 | $429,145.55 | $529,145.55 | 35% | $59,250.50 | $125,950.44 |

The difference that Plaintiff would pay in taxes if she received the salary in the appropriate years versus in a lump sum in 2024 is $36,474.58 ($125,950.44 - $89,475.86).

### III. CONCLUSION

For the reasons stated, Plaintiff's Motion to Amend Judgment (d/e 76) is GRANTED in part and DENIED in part.  In addition to the $100,000 award granted by the jury, Plaintiff is awarded damages for equitable relief in the amount of: $429,145.55 in back pay; $79,420.08 in prejudgment interest; $23,916.66 in health care differential; $76,859.13 in IMRF contributions; and $36,474.58 as a tax-component award, for a total award of $745,816.00.

**ENTERED: May 21, 2024.**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**